[No. 17645. Department Two. March 10, 1923.]

A. L. JOHNSON *et al., Respondents,* v. ELLIS-MYLROIE LUMBER COMPANY, *Appellant.*[1]

EVIDENCE (168, 175)—PAROL TO VARY WRITING—SEPARATE ORAL AGREEMENT—AMBIGUITY. A contract for the sale of logs, which the seller agreed "to log continuously on said claim until done, unless breakdowns or labor trouble prevent" is not ambiguous; and it is inadmissible to show by parol that the parties had agreed that delivery should be made at a specified rate and within certain time.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 24, 1922, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Affirmed.

*Alexander, Bundy & Swale,* for appellant.

*James C. McKnight,* for respondents.

TOLMAN, J.—The parties hereto, on December 15, 1919, entered into the following written contract:

"Potlatch, Washington,
"Dec. 15, 1919.

"It is hereby agreed between A. L. Johnson, party of the first part, and Rogers-Mylroie Lumber Company, party of the second part, that Rogers-Mylroie will take and is to have at any time all the fir logs on Johnson's & Gunstone's claim whenever said logs are put in the water.

"The party of the first part agrees to log continuously on said claim until done unless breakdowns or labor troubles prevent.

[1] Reported in 213 Pac. 464.

"The price agreed upon is $19.00 per Flat, B. M.

"It is further agreed between the two parties that said logs are to be scaled by Frank Fredson, of Shelton.

"This nineteen dollars per thousand, being the set price, agreed upon, regardless of the market price one way or another.

"I, A. L. Johnson, as partner and manager for Johnson & Gunstone Logging Co., hereby acknowledge the receipt of One Thousand Dollars ($1,000), as part payment on said contract.

"Terms to be cash at 2% discount, on delivery of scale bills.

"The said $1,000, as heretofore acknowledged, is to apply on the first raft.

"The above price stated is to be F. O. B. Johnson's & Gunstone's Landing.

"Signed this 15th day of December, 1919.

        "(Signed)   JOHNSON & GUNSTONE,
                        "By A. L. Johnson.
        "(Signed)   ROGERS-MYLROIE LUMBER Co.,
                        "By A. W. Mylroie, Pres."

Thereafter for some months respondents delivered, and appellant accepted, logs under the contract, but on June 30, 1920, appellant refused to receive or accept any more logs. Between the time of the refusal and March 24, 1921, respondents tendered to appellant, in the water, and according to the terms of the contract, logs aggregating 2,311,710 feet, which appellant refused to accept, and, after due notice, respondents sold these logs upon the open market for the best price obtainable, and after deducting the expenses of resale, claimed a loss of $6,103.71, and interest, occasioned by appellant's alleged breach of the contract, and brought this action to recover.

After denying the allegations of the complaint with reference to the breach of contract and the loss, appellant pleaded as an affirmative defense the details of

the negotiations between the parties leading up to the execution of the written contract, and,

"That thereupon plaintiff and defendant executed a written document, more fully set forth in paragraph III of plaintiff's complaint; and that then and there it was further and orally agreed by and between said parties that all of the logs to be delivered under the terms thereof were and should be of a better quality than that certain raft or tow of logs then in the water, as hereinbefore set forth; and that the logs delivered under the terms thereof should be delivered at the rate of not less than 600,000 feet per month from and after the date of said instrument; and that all of said logs should be cut and delivered on or before the first day of July, 1920.

"That a reasonable time for the delivery of the logs under the terms of said agreement was at the rate of 600,000 feet per month for each and every month after the date of said contract; and that the reasonable time for the delivery of all of the logs to be cut on said land was the first day of July, 1920."

and further pleaded that the plaintiff had failed to perform such contract and so deliver; that the logs delivered were of inferior quality, and demanded judgment in its favor by reason thereof.

These affirmative allegations were denied by the reply, and the cause was tried before the court sitting without a jury, resulting in a judgment in respondent's favor in the sum of $6,295.12, from which this appeal is taken.

There is little contention as to the facts proven, except in a minor matter hereinafter referred to, but the main issue presented here is as to the rulings of the trial court in sustaining objections to the introduction of testimony tending to prove the allegations of the affirmative defense that delivery should have been made at the rate of 600,000 feet per month, and the whole delivered by July 1, 1920.

The written contract is plain and unambiguous, with the possible exception of the paragraph which reads:

"The party of the first part agrees to log continuously on said claim until done unless breakdowns or labor troubles prevent."

Respondents allege in their complaint, and their proofs went to show, that they logged continuously until done, but went no farther. Appellant contends that this provision of the contract placed upon respondents the burden of showing, as a part of their case in chief, what was the measure of their duty in respect to performance, and that they did in fact perform that duty, and, having failed in that respect, the action should have been dismissed; or, at least, the appellant was entitled to show as a part of its defense, that the words "to log continuously" had reference to the needs of the appellant then known to the respondents, and required the work to be prosecuted with a reasonable equipment and force of men, and to be performed within a reasonable time. This defense may have been predicated upon this theory, and the rejected evidence would have tended to show what was within the contemplation of the parties at the time the contract was made, and perhaps would have thrown light upon what would be a reasonable time for performance; but would have certainly tended to show terms which were omitted from the written contract.

We are satisfied that the affirmative answer and the offered evidence went too far, and constituted an attempt to vary by parol evidence the terms of a written contract. We see no ambiguity in the written contract. When read as a whole, it means no more and no less than that respondents should, in good faith, log continuously. The allegations of their complaint and their proofs are sufficient in that respect, as good faith is

always presumed until the contrary appears. Had appellant pleaded and attempted to prove bad faith in this respect, then the surrounding circumstances within the contemplation of the parties at the time of entering into the contract might, perhaps, have been admissible as bearing upon that issue; but clearly here the attempt was made to go beyond that question and raise the defense that, notwithstanding the terms of the written contract, the parties had agreed that delivery should be at a certain specified rate and within a certain specified time. Citation of authority is unnecessary to sustain the rulings complained of, because manifestly the purpose was to vary the terms of a written contract.

It is briefly urged that there was error in fixing the amount of damages accruing from the resale of the first raft of logs disposed of after appellant's refusal to accept the logs. An examination of the evidence upon this point convinces us that it fully sustains the findings of the trial court.

Finding no error, the judgment appealed from is affirmed.

MAIN, C. J., FULLERTON, PARKER, and PEMBERTON, JJ., concur.